CASE No. 906.

## CASTON v. BROCK.

1. An appeal from an order granting a new trial on the minutes dismissed, because the notice of appeal did not contain an assent on the part of appellant that if the order be affirmed judgment absolute should be rendered against him.
2. Punctuation allowed some force in construction, it being, in this case, strictly consistent with one of two senses, which were equally grammatical, and inconsistent with the other.
3. The terms *bill of exceptions* and *exceptions taken,* considered.
4. Application for leave to amend a notice of appeal must be in writing and on due notice.
5. Such amendment would not be allowed where the appeal was based upon the *hearing at chambers* of a motion for new trial upon the minutes, which was noticed at the same term and entered upon his docket by the presiding judge, but its hearing postponed by agreement beyond the adjournment of the term.

Before KERSHAW, J., Chesterfield, September, 1879.

Action by Robert T. Caston to recover from Mary A. Brock certain lots of land in the town of Cheraw.   Verdict for defend-

ant. Motion by plaintiff on minutes for a new trial, which the presiding judge, with consent of counsel on both sides, noted upon the docket in the following words: "Motion for a new trial to be argued by consent, at Marlboro'."

At Marlboro' it was verbally agreed between counsel that the motion should be heard at Darlington during the succeeding term of the Circuit Court, written argument to be submitted by either counsel desiring.

About October 15th, 1879, defendant's counsel were notified, by letter, that the argument of plaintiff's counsel had been forwarded to the Hon. J. B. Kershaw, at Darlington, whereupon defendant's counsel wrote to plaintiff's counsel demanding a copy of the argument sent, or the points and authorities contained in it, in order that a reply might be framed thereto. On October ——, 1879, *before* the close of the Darlington court, plaintiff's counsel sent the points and authorities to defendant's counsel, in deference to said demand, but the same were not received till October 28th, 1879, *after* the close of the said Darlington term. Defendant's counsel then refused to consent further in the premises, or do anything to further the hearing and determination of the motion.

Plaintiff's counsel then served a notice upon defendant's counsel, that Judge Kershaw would be asked to render his decision before January 1st, ensuing. Defendant objected, upon the grounds that such motion could be heard and determined only at the term at which heard; that there was no agreement or waiver beyond the term at Darlington; and that defendant had not received plaintiff's points and authorities in time to enable him to reply at Darlington.

An order was granted by his Honor as of September Term, 1879, but dated December 31st, 1879, and filed January 5th, 1880, granting the motion for a new trial on the minutes. Defendant appealed, upon the ground that his Honor erred in granting the motion and overruling his objections. In his notice of appeal there was no assent that final judgment should be rendered against him in this court, if he failed in his appeal; and for such omission plaintiff moved to dismiss the appeal.

*Messrs. Dudley & Newton,* for appellant.

*Messrs. Prince & Pollock,* contra.

August 31st, 1880.   The opinion of the court was delivered by

WILLARD, C. J.   This is an appeal from an order granting a new trial.   A preliminary objection is taken to the appeal, on the ground that no assent on the part of the appellant is contained in the notice of appeal, to the effect that if the order be affirmed, judgment absolute shall be rendered against the appellant, in accordance with sub-division 2, Section 11, of the code, and that, as a consequence of such omission, the appeal is not effectual for any purpose and should be dismissed.   To this objection the appellant replies that the order for a new trial, appealed from in the present case, was made upon a motion heard upon the minutes of the Circuit judge, and is not, therefore, an order granting a new trial *on a case made or a bill of exceptions,* within the meaning of the proviso in sub-division 2, Section 11.

That portion of sub-division 2, Section 11, directly involved, is as follows : " But no appeal to the Supreme Court from an order granting a new trial, on a case made or a bill of exceptions, shall be effectual for any purpose, unless the notice of appeal contain an assent on the part of the appellant that if the order be affirmed judgment absolute shall be rendered against the appellant."   It is essential to the understanding of the purpose of this proviso, affecting the power of the court to entertain such appeals, to read, in connection with the foregoing citation, the provisions that immediately follow it, viz. : " Upon every appeal from an order granting a new trial on a case made or on exceptions taken, if the Supreme Court shall determine that no error was committed in granting the new trial, they shall render judgment absolute upon the right of the appellant."

There are two possible readings of that part of Section 11 under immediate consideration.   According to the first, no assent can be demanded unless the order appealed from was made upon a motion heard upon a *case or bill of exceptions.*   This is the construction for which the appellant contends, urging that the

order in question having been made upon the minutes of the judge, it was not a case in which the assent of the appellant in question could be demanded, such order not having been granted on a *case or bill of exceptions.* The other reading will be understood by inverting two members of the sentence, as follows: *" But no appeal to the Supreme Court, on a case made or bill of exceptions, from an order granting a new trial,"* &c. The effect of this reading would be that all appeals from orders granting new trials would demand such assent on the part of the appellant, whether heard at the Circuit upon a case, with or without exceptions, or upon the minutes of the judge.

The grammatical construction of the language quoted, aided by the punctuation of the text of the code, as it appears in the general statutes, (page 564), admits, to say the least, the possibility of the reading last above indicated. The words, " on a case or bill of exceptions," act as a condition or other qualification of some antecedent phrase. As such they do not, in a grammatical sense, necessarily qualify their immediate antecedent, so as to become a definition of the *kind* of order that is subject to the proviso under consideration; but they may, without forced construction, qualify the prior antecedent, in this sense having the effect of enlarging rather than narrowing the sense of that which they affect, by including *all* appeals from orders granting new trials, both such as are brought into the Appellate Court upon a case and upon a bill of exceptions. It is perfectly consistent that a member of a sentence, limiting the scope of a precedent, general direction should be followed by one giving the greatest amplitude to that direction consistently with such limitation; and had such been the intention of the legislature, the mode adopted is a proper and customary mode of giving expression to such intention.

Punctuation is the least reliable guide to the sense of a statute, but cannot properly be said to be without any force. In itself it is ordinarily insufficient to fix the sense of a statute where that is disputable, especially where the question is one of the force of a comma; but when the punctuation is strictly consistent with one of two senses, equally grammatical, and inconsistent with the other, it should be allowed the force of opening the question of

construction to receiving aid from the context, and from the nature of the purpose the statute has in view. It is certainly competent to cancel the equally weak argument that arises from the relative position in the sentence of the two clauses. The punctuation in the present case is entitled to this degree of consideration, for the insertion of a comma after the words "from an order granting a new trial," and before the words "on a case or bill of exceptions," tends to the conclusion that each of these clauses is an independent member of the sentence, having each distinct and independent effect upon the precedent general declaration, and such as is demanded by the reading suggested. It must be concluded that the reading that extends the provision as to *assent* to all appeals from orders granting new trials, is, to say the least, possible, and that is a sufficient warrant for going to the context for the proper solution of the question.

We come now to consider what force, in settling the construction of the words just considered, should be ascribed to the language immediately following them, which declares that "upon every appeal from an order granting a new trial upon a case made, or on exceptions taken, if the Supreme Court shall determine that no error was committed in granting the new trial, they shall render judgment absolute upon the right of the appellant." Construing this clause as if it was an independent provision, it becomes necessary to inquire what cases are embraced within it. The important words here differ from those in the preceding provision; there the expression was "on a case made or bill of exceptions;" here the expression is, "on a case made or exceptions taken."

Both of these expressions, "on a bill of exceptions," and "on exceptions taken," are familiar to the courts of common law, and have been so from time immemorial. Until the recent act on the subject, exceptions were always taken at the trial. They were usually *taken* orally, but might be taken in writing. The taking of an exception before the jury left their seats, was an act incident to the trial that laid the foundation for a bill of exceptions. The bill of exceptions was a formal statement for the purposes of a writ of error or appeal to a court possessing the proper juris-

diction, by way of review of the exceptions that had already been taken upon the trial.

By Section 288 of the code, the use of the bills of exceptions is dispensed with, in terms, and the practice substituted of stating the exceptions that had been taken at the trial in a case containing so much of the evidence as might be necessary to show the bearing and force of the exceptions there taken. The direct meaning, then, of the clause of the section last quoted is, that whenever an exception has been taken at the trial, and an order granting a new trial has been made, based on such exception, the Supreme Court, on appeal, in determining that no error of law is involved in such exception, must give judgment absolute. The act of 1878 (16 *Stat.* 698) extends the right of taking exceptions for ten days after the trial, but this does not change the nature of an exception or the substantial sense of what is meant by *taking an exception.*

A motion in the Circuit Court for a new trial, after a verdict on an action in the nature of a suit at law, may be made either upon exceptions taken at the trial or without any such exception on certain other familiar grounds. An order for that purpose can be reviewed in this court only so far as it rests on exceptions taken at the trial. This is equally true where the motion for the new trial is made upon the minutes of the judge, as where made on a case formally prepared for that purpose. If, then, a motion for a new trial is made at the Circuit upon the minutes of the judge, it may rest, wholly or in part, on exceptions taken at the trial, or it may rest altogether on grounds independent of any exception taken. If it rests in whole or in part on exceptions taken, then it is capable of being reviewed on appeal in this court to the extent that it involves the matter of exceptions taken. If granted on grounds other than those embraced in exceptions, it cannot be reviewed on appeal in this court, except in a case, not supposable, of being granted on grounds that in themselves could not justify the granting of a new trial in any case. Therefore every order granting a new trial that is appealable to this court is, necessarily, an order *on exception taken,* and thus within the description of those cases in which this court must render judgment absolute upon the right of the appellant.

It remains to consider whether the provisions of the section that demand the assent of the appellant to the rendition of judgment absolute were intended to embrace all cases that are included in that part of the section that declares when judgment absolute shall be rendered on such appeals. It is clear that the assent of the appellant was deemed the proper justification for such judgment absolute, as the previous part of the section would otherwise have been omitted altogether, and the direction to the court to render judgment absolute in such cases would have been made compulsory without laying any special ground therefor. The purpose of requiring the assent of the appellant then being that a certain judgment may be rendered, the cases in which the assent may be demanded should be identical with the cases in which that judgment should be rendered. The *end* being a judgment of a certain character, and the *means* to that judgment being the assent of the appellant, the language that describes the means must, in doubt, find its key of construction in that part which describes the end sought to be obtained. It would follow that the intention of this section cannot be reached by reading the language demanding the assent of the appellant as restricting that demand to cases that have been heard before the Circuit Court on a formally prepared case or bill of exceptions. Unless, then, the words declaring, directly, the cases in which the assent of appellant may be demanded are free from doubt, their sense must be accommodated to the obvious purpose of the provision. That the reading contended for by the appellant is not free from doubt is apparent on other grounds than those already considered, for that reading assumes that what the code had in view in using the language defining the cases in which assent might be demanded was the observance of certain forms of proceeding, while that which is mentioned as a form of procedure in such cases, namely, a bill of exceptions is rendered absolute by another section of the code.

Even if the considerations already advanced do no more than place the reading already suggested on grounds of probability, yet when the purpose of the provision is considered with reference to its reason, that probability must be resolved into certainty.

The clear object of demanding the assent of the appellant to a judgment absolute is to discourage appeals from orders granting new trials, except where the controversy is of such a nature that it may be finally disposed of upon the argument of pure questions of law in the Appellate Court. Every appealable order granting a new trial must involve the fact that a ruling or decision made by the Circuit Court has been reversed by the same court, and, in fact, by the same judge who gave such ruling or decision, according to the general provisions of Section 289, which requires that the hearing of such motion shall be at the same term, except when the judge trying the cause shall otherwise order. It is unlikely that a judge would overrule his previous determination except upon the strongest reasons and after careful consideration. While the probabilities are thus strongly in favor of the last and deliberate conclusion reached, the inconveniences arising from appeals from orders granting new trials are, as a general rule, very great. The party allowed to appeal without restrictions from such orders has two chances, he may contend for his verdict, that has been set aside, in the appellate court, and, on being dismissed from that court without relief, may return to the Circuit and have a trial, *de novo,* of the whole case. The decision of the Appellate Court may possibly settle nothing of importance to the case, as, on a second trial, the subject and ground of exception may be entirely eliminated from the case. When, however, the whole question is one of law, capable of being finally disposed of by the Appellate Court, no such inconvenience arises. The policy of the provision is to leave the responsibility with the appellant in such cases of deciding for himself whether the case should be treated as one capable of being finally disposed of by the Appellate Court in the event of the failure of his appeal. If that is his judgment he expresses it by a corresponding assent in his appeal; if, on the other hand, he perceives that his case cannot properly be disposed of on such appeal, then his course is to submit to the order granting a new trial, with no ultimate loss, usually, beyond that of some technical advantage gained at the first trial from an unwary adversary, who will be better instructed on the second trial.

This being the object in view, it is apparent that drawing a distinction between cases heard on formal papers and those heard on an informal presentation on the minutes and memory of the judge, is senseless. If a case is settled, it is the minutes and the memory of the judge that, in case of dispute, must settle it. The whole distinction between motions heard upon the minutes of the judge and upon a case formally settled, turns simply on the propriety of having the facts either acted upon or placed in a position for future action while the memory of the judge is fresh, his minutes and his memory being, in both cases, the test of what occurred at the trial.

It must be concluded that the notice of appeal was irregular and the appeal should be dismissed. The counsel for appellant upon the argument, expressed a desire that in the event that the notice of appeal should be adjudged defective he might be allowed to amend. Such application for amendment should be made in writing and upon due notice, but in the present case, even if made in proper form, the court having looked into the papers and become satisfied that there is no merit in the appeal, can see no ground for the exercise of its discretion by allowing the amendment asked.

McIVER and McGOWAN, A. J.'s, concurred.